Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910
mayerbrown.com

**Matthew D Ingber**
Partner
T: +1 212 506 2373
F: +1 212 849 5973
MIngber@mayerbrown.com

# MAYER | BROWN

June 24, 2019

BY ECF

Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   United States v. Mangione, No. 17-cv-5305
      (NGG/RML)

Dear Judge Levy:

On behalf of HSBC Bank USA, N.A. ("HSBC"), we write to oppose the Government's June 18, 2019 motion compelling HSBC to produce documents in response to a non-party subpoena in the above-captioned matter. A year after the subpoena was served and six months after HSBC's last (and what it understood to be its final) production, this out-of-the-blue motion states that HSBC has "refused to comply" with the subpoena and that HSBC has "continued to withhold [] documents" that are "material and necessary" to the case. This is fundamentally wrong. The motion should be denied both because it is untimely and because HSBC has offered everything the Government has requested.

The chronology is important. Over a year ago, on June 7, 2018, the Government, through its counsel Edward Newman, served the subpoena on HSBC for the production of documents relating to its role as trustee for ACE 2007-HE4 and ACE 2007-HE5 (the "Subject Deals"). Among other documents, the subpoena sought the production of documents "sufficient to identify all losses, fees, and expenses that [HSBC has] incurred or accrued or paid in connection with [HSBC's] role as trustee on the Subject Deals …." HSBC timely served its responses and objections to the subpoena on June 21, 2018, and after several meet and confer discussions with Mr. Newman, produced its first set of documents in August 2018. The Government was silent for five months – until January 2019 – when it requested additional documents that it believed were responsive to the subpoena. Within days HSBC made a second production. For six months following that production, we heard no complaints from the Government about the sufficiency of HSBC's production, and we received no further requests for documents.

It was not until two weeks before the close of fact discovery, apparently in the context of a dispute with Defendant about the discovery schedule, that the Government requested that

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Honorable Robert M. Levy
June 24, 2019
Page 2

HSBC produce "outstanding" documents concerning "the legal and external losses and expenses HSBC incurred as a result of its work as trustee on the Subject Deals." As we explained to Mr. Newman, this was a complete surprise – we were unaware of any documents that the Government viewed as "outstanding," we had previously informed the Government that HSBC was indemnified for any fees incurred, we had produced governing contracts and fee schedules on this topic, and we believed the Government was fully satisfied with the production based on comments from Mr. Newman during previous meet and confer discussions. This belief was bolstered by the Government's six-month silence following those discussions.

Nonetheless, we agreed to revisit a discussion that commenced in *June 2018* to address the question of whether HSBC incurred losses and expenses related to its work on the Subject Deals. We had previously told Mr. Newman, and he agreed, that the *amount* of fees and expenses incurred by HSBC was irrelevant. To the extent the Government wanted to know *whether* HSBC incurred fees, and whether those fees were indemnified pursuant to the terms of the governing contracts, we offered to enter into a stipulation rather than incurring the expense and burden of collecting, reviewing and producing documents reflecting the fees and expenses incurred by HSBC, when they were incurred, in what amounts, and for what purpose. This made perfect sense: no party was disputing the underlying fact that HSBC incurred fees and expenses or that it was fully indemnified, and this stipulation was far less burdensome for a non-party than the process of collecting, reviewing and producing documents reflecting fees and expenses over the past 12 years.

Although the Government had let this issue languish for more than a year, on June 10 we offered the stipulation yet again. Mr. Newman asked us to draft the stipulation on Thursday, June 13. We delivered the draft to Mr. Newman on Monday, June 17. Mr. Newman delayed a requested meet and confer that day, and on Tuesday, June 18, told us that it was insufficient because it accounted only for litigation-related fees and expenses, and not those unrelated to litigation – a request that raised serious questions about, among other things, relevance. He told my colleague, Jamie Leipzig, that the Government might move to compel if we were unable to revise the stipulation to include that information. Within a few hours, I emailed Mr. Newman to request that he defer any filing for 24 hours until we spoke to HSBC about his new request. Mr. Newman proceeded to file the motion that day, ignoring my email, only to eventually receive a revised stipulation that included the requested information about non-litigation fees and expenses.

We have now given the Government precisely what it requested – a revised stipulation that directly addresses their latest request for information about non-litigation fees and expenses. On Friday, June 21, I asked Mr. Newman to withdraw the motion so that HSBC could avoid the cost and burden of drafting a response. He immediately refused my request, on the ground that Defendant's counsel "won't stipulate that this constitutes affecting a FIFI under FIRREA" – a disputed *legal* conclusion that has no bearing on whether HSBC produces a stipulation of undisputed facts, or undertakes the costly and burdensome process of producing documents reflecting those undisputed facts. In other words, even if HSBC were to produce the requested documents, the parties would be in the exact same position as they would be with a stipulation –

Mayer Brown LLP

Honorable Robert M. Levy
June 24, 2019
Page 3

arguing about a legal conclusion at the core of their dispute, based on the undisputed fact that HSBC incurred, and was indemnified, for fees and expenses related to the Subject Deals.

Under Rule 45 of the Federal Rules of Civil Procedure, the Government "must take reasonable steps to avoid imposing undue burden or expense" on HSBC. The Government has done the opposite. It filed this motion a full year after it served the subpoena, and at the eleventh-hour of fact discovery. *See Joseph v. Sikorsky Aircraft Corp.*, No. 3:14CV00424 (AWT), 2015 WL 5304177, at *3 (D. Conn. Sept. 9, 2015) (denying motion to compel filed six days before the end of the discovery period as untimely because "a motion to compel should not be served at the last minute" where "[d]iscovery … dragged on for a year or more"); *Colon v. City of New York*, No. 12-CV-9205 JMF, 2014 WL 4100607, at *3 (S.D.N.Y. Aug. 20, 2014) (denying motion to compel as untimely where it was filed the day before the close of a long and extended discovery period). It waited six months after accepting HSBC's production as complete to request additional documents. It asked HSBC to draft a stipulation, only to reject the stipulation because it lacked irrelevant information. It refused HSBC's request to defer its filing by a mere 24 hours so that HSBC could address the Government's most recent request. And it received a revised stipulation with all the information it sought from HSBC, but *still* rejected the stipulation because the Defendant would not agree on what *legal* conclusion could be drawn from the undisputed facts reflected in the subpoena. These are not "reasonable steps" by any party, much less the Government.

In short, the Government has done nothing to lessen the burden on HSBC, it has offered no credible reason why the offered stipulation is insufficient, and its motion is untimely. For all of these reasons, we respectfully request that the motion be denied.

Respectfully,

/s/ Matthew D. Ingber

Matthew D. Ingber